## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CHRISTOPHER BAINES,

          Plaintiff,

   v.

M. PILLAI, and
JAMES SHORTRIDGE

          Defendants.

3:16-CV-01374 (CSH)

December 15, 2016

## <u>INITIAL REVIEW ORDER</u>

The Plaintiff, Christopher Baines, is currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker"). He filed a civil rights complaint *in forma pauperis* pursuant 42 U.S.C. § 1983 against Dr. M. Pillai and Nurse James Shortridge. The Court, pursuant to 28 U.S.C. § 1915A, must undertake an initial review when a plaintiff requests to proceed *in forma pauperis* to determine whether the Complaint sets forth any claims upon which relief may be granted. This Order serves as the Court's review under §1915A.

### I.      Facts

The Plaintiff suffers from type 1 diabetes. Complaint, ¶ 2. He arrived at MacDougall-Walker from Corrigan-Radgowski Correctional Institution on April 1, 2016. Complaint, ¶ 1. Upon his arrival, the Plaintiff asked the processing officer for a diabetic snack and was given cereal without milk. Complaint, ¶ 2. Plaintiff was then processed through medical by a male nurse. Complaint, ¶ 3. He informed medical intake personnel of his condition and sensitivity to regular insulin. Complaint, ¶ 3. Plaintiff also informed the medical intake personnel that before

1

his incarceration, he was prescribed Novolog Humulin insulin by the West Haven V.A. Hospital to reduce the occurrences of low blood sugar seizures. Complaint, ¶¶ 4, 11. The nurse informed Plaintiff that the Department of Corrections ("D.O.C.") would not honor that prescription. Complaint, ¶ 4.

On April 2, 2016, at approximately 5:15 a.m., Plaintiff was given a morning dose of insulin. Complaint, ¶ 5. Plaintiff asked if 5:15 a.m. was the usual time that insulin was dispensed, and the nurse replied that it was and that this time was protocol. Complaint, ¶ 5. Plaintiff then asked when breakfast was served, and the nurse replied that breakfast was at 7:00 a.m. Complaint, ¶ 6. He then explained to the nurse that this would leave him susceptible to diabetic low blood sugar seizures. Complaint, ¶ 6. He also explained to the nurse that Type 1 dependent diabetics are advised by doctors to eat fifteen to twenty minutes after insulin injections. Complaint, ¶ 7. The nurse informed Plaintiff that eating at 7:00 a.m. was protocol. Plaintiff asked for a diabetic snack to hold him over until breakfast, but the nurse refused and told him to submit a written request to medical. Complaint, ¶ 8.

Shortly thereafter, Plaintiff suffered a low blood sugar seizure attack and a "Code White" was called. Complaint, ¶ 9. Plaintiff was taken out of his unit by stretcher. Complaint, ¶ 9. Once the Plaintiff was stabilized, he was informed that his blood sugar registered as "lo" on the glucometer, which means his blood sugar was below "20." Complaint, ¶ 10. Plaintiff asserts that because of the staff's adherence to protocol, their negligence, and their indifference to his medical needs, he could have died. Complaint, ¶ 10. Plaintiff, after the first seizure, informed the staff that he has been an insulin dependent Type 1 diabetic since September 1983, and that his

suffers from hypoglycemia unawareness, meaning he no longer receives low blood sugar warning signs and is often unaware that his glucose levels are dangerously low. Complaint, ¶ 12.

The Plaintiff suffered three further severe low blood sugar seizures before Dr. Pillai evaluated him on May 17, 2016. Complaint, ¶ 13. The Plaintiff, prior to his visit with Dr. Pillai, had made several written requests to see a physician, and submitted one Urgent Emergency Order, which was ignored for over seventy-two hours, breaking protocol. Complaint, ¶ 13. Dr. Pillai stated that the chart did not reflect the morning low blood sugar readings that Plaintiff experienced. Complaint, ¶ 14. Plaintiff told Dr. Pillai that he thought that the nurses may have only documented his glucose levels after he was given glucagon shots, glucose gel sticks, and orange juice, which were resulting in high glucose levels. Complaint, ¶ 14.

On May 18, 21, and 23, 2016, the plaintiff suffered severe further low blood sugar seizures and his blood sugar registered as "lo." Complaint, ¶¶ 15–19.  Plaintiff also alleges that the medical staff is indifferent to his need to not use regular insulin, which for him produces variations in his glucose levels which can result in seizures. Complaint, ¶ 19.

On May 31, 2016, Nurse James Shortridge pricked the plaintiff's finger to draw blood to test for his insulin level.  Complaint, ¶ 20. Before the results were ready the Plaintiff became incoherent and was in and out of consciousness. Complaint, ¶ 21. Plaintiff recalled people yelling "get in the wheelchair" however, he could not respond because he was in and out of consciousness. *Id.*  Officers handcuffed the Plaintiff and transported him in a wheelchair to the restrictive housing unit. Complaint, ¶ 24.  A nurse tested the plaintiff's glucose level and it was low. *Id.*

Plaintiff, after being given a glucose gel stick, asked what had happened. Complaint, ¶ 25. He was told by a corrections officer that he had caused a disturbance. Complaint, ¶ 25. Plaintiff apologized for anything he might have said or done while having low blood sugar. Complaint, ¶ 25. The Correction Officer told him he would speak to the medical personnel and act accordingly. Complaint, ¶ 25. Plaintiff spent ten days in the Restrictive Housing Unit ("RHU") due to this incident. Complaint, ¶ 26. In the disciplinary report, Nurse Shortridge stated that he gave the Plaintiff several orders to return to the M1 Unit, that Plaintiff refused medication, ignored staff orders, and that Plaintiff became agitated and aggressive. Complaint ¶¶ 27–29. Plaintiff alleges that this reaction is a common result of low blood sugar. Complaint, ¶ 31.

Plaintiff also alleges that on June 23, 2016, he suffered a further diabetic blood sugar seizure. Complaint, ¶ 32. Medical was called, and his blood sugar level was "22," which is low. He was given four glucose gel sticks and one glucogon shot. *Id.* Thereafter, his blood sugar level stabilized at "99" and he was able to return to his unit. *Id.*

## II.    Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* A complaint is "frivolous" under § 1915 if it "lacks an arguable basis either in law or in fact." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (an action is considered "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the  claim is 'based on an indisputably

meritless legal theory'") (quoting *Neitzke*, 490 U.S. at 327)). In particular, "[a] finding of factual

frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly

incredible." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). A claim is thus factually frivolous

"if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful,

fantastic, and delusional." *Id.* (internal citations and quotation marks omitted).

Furthermore, a claim is based on an indisputably meritless legal theory when either the

claim lacks an arguable basis in law*, Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per

curiam*), or a dispositive defense clearly exists on the face of the complaint, *Pino v. Ryan*, 49

F.3d 51, 53 (2d Cir. 1995). In reviewing a complaint to determine whether it states a viable

claim, the court "accept[s] as true all factual allegations in the complaint" and draws inferences

from these allegations in the light most favorable to the plaintiff. *Cruz* v. *Gomez,* 202 F.3d 593,

596 (2d Cir. 2000). Dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is then only appropriate

when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Id.* at 597 (citation and internal quotation marks omitted).

Section 1915(e) provides that "dismissal for failure to state a claim is mandatory." *Id.* at 596.

Although detailed allegations are not required under Federal Rule of Civil Procedure 8, "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations

omitted).   A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the

elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual

enhancement,'"does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally,"the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## III.   Analysis

To the extent that the Plaintiff seeks damages from the defendants in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). If a suit against a state official in his or her official capacity seeks money damages, the state is deemed the real party in interest, and is thus entitled to Eleventh Amendment immunity, as any damages awarded would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986). However, a plaintiff may sue individual Defendants under § 1983 for money damages. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). The Eleventh Amendment bar that applies when a plaintiff sues a defendant in their official capacity does not apply when the Defendant is sued in their individual capacity. *Id.* All claims suing defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The Eighth Amendment's prohibition on cruel and unusual punishment protects against deliberate indifference to a prisoner's serious medical needs by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate deliberate indifference to medical needs, a plaintiff must allege harmful acts or omissions that deny or delay unreasonably access to needed

6

medical care or to wantonly cause infliction of unnecessary pain. *Id.* at 104–06. Accordingly, not all failures by prison staff to provide medical care rise to the level of a constitutional violation. *Id.* Instead, to support a § 1983 claim, the complained-of conduct must "shock the conscience" or constitute a "barbarous act." *Klemonski v. Semple*, 2010 WL 2011142, *3 (D. Conn. May 19, 2010).

The deliberate indifference standard contains two prongs: (1) the alleged deprivation must objectively be "sufficiently serious" enough to produce death, degeneration, or extreme pain; and (2) subjectively, the defendants must have been aware of a substantial risk that the inmate would suffer serious harm by defendant's act or omission. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006*); Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

Plaintiff's alleged treatment at the hands of the Defendants was sufficiently serious to recklessly endanger his safety. Plaintiff alleges at least six instances where he had seizures as a result of low blood sugar, and that each of these seizures could have been fatal. Moreover, Plaintiff alleges that he informed the staff of his history with type 1 diabetes and his various complications with the disease which require special insulin and special care. I am bound at the present stage of the litigation to accept that and subsequent factual allegations as true. Defendants were slow to respond, and would not accommodate Plaintiff's needs, despite his attempts to explain why they were medically necessary. Furthermore, Defendants were aware that there was a risk to the Plaintiff, particularly after he experienced his first seizure and a glucose level that was dangerously low. Plaintiff was consistently denied medical care, and when he finally was able to see a physician, Plaintiff alleges that his seizures had not been documented by the nurses

administering his insulin. Finally, Plaintiff alleges that he was punished by being housed in the RHU for ten days as a result of symptoms of his diabetic seizures.

To the extent that Plaintiff is alleging negligence on the part of the defendants, those claims are dismissed. Mere negligence does not support a § 1983 claim. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). However, the Court concludes that the plaintiff has stated plausible claims that Dr. Pillai and Nurse Shortridge were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Thus, Plaintiff's deliberate indifference to a serious medical need or inmate safety claims will proceed against the defendants in their individual capacities pursuant to 28 U.S.C. § 1915A.

## IV.    Conclusion

The Court enters the following orders:

(1)    The claims for monetary damages against the defendants in their official capacities and for negligence are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The Eighth Amendment claims of deliberate indifference to medical needs will proceed against the defendants in their individual capacities.

(2)    **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Dr. Pillai and Nurse Shortridge and mail a waiver of service of process request packet to each defendant in his individual capacity at his current work address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of all the requests.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with

Federal Rule of Civil Procedure 4(d).

(3)    Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(4)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order.  Discovery requests need not be filed with the court.

(5)    All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

The foregoing is SO ORDERED


Dated: New Haven, Connecticut
       December 15, 2016


                                              */s/ Charles S. Haight, Jr.*
                                              Charles S. Haight, Jr.
                                              Senior United States District Judge

9